UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――x
V.E.C. CORP. OF DELAWARE d/b/a         :
LEASEAIR,                              :
               Plaintiff,     :
                                       :
  - against -                         :    **OPINION AND ORDER**
                                       :    10 Civ. 2542 (ER)
IRA HILLIARD, BRIDGET HILLIARD and      :
NEW LIGHT CHURCH WORLD and              :
OUTREACH WORSHIP CENTERS, INC.;         :
PUTNAM COUNTY NATIONAL BANK;            :
DEAN RYDER, NANCY MOLLOY;               :
COLUMBIA ENTERPRISES, INC.; ABU         :
NASIR SYED; BARRY ELLIOT; CURTIS        :
W. SIMONSEN, and STEPHEN DALZIEL,       :
                                        :
              Defendants.      :
―――――――――――――――――――――――――x

Appearances:

Francis P. Crotty
Fisher, Porter Thomas & Reinfeld, P.C.
Englewood Cliffs, New Jersey
*Attorney for Plaintiff*

Bruce A. Seidman
Marshall, Dennehey, Warner, Coleman & Goggin
Roseland, New Jersey
*Attorney for Defendants Ira Hilliard, Bridget Hilliard,
and New Light Church and World Outreach Worship Centers, Inc.*

Joseph M. Cerra
Forman Holt Eliades & Ravin LLC
New York, New York
*Attorney for Defendants Putnam County National Bank,
Dean Ryder, and Nancy Molloy*

Ramos, D.J.:

      Plaintiff V.E.C. Corp. of Delaware, d/b/a LeaseAir ("VEC") commenced this action stemming from four separate leases of aircraft which VEC owned. Now pending are motions to

dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Ira and Bridget Hilliard (the "Hilliards") and New Light Church and World Outreach Worship Centers, Inc. ("New Light Church," and collectively the "Hilliard Defendants") (Doc. 43), and by defendants Putnam County National Bank ("Putnam"), Dean Ryder, and Nancy Molloy, the president and an officer of Putnam, respectively (collectively the "Putnam Defendants") (Doc. 45). The balance of the named defendants have neither appeared nor filed answers.

By Memorandum Decision filed on December 13, 2011 (Doc. 38), The Honorable Vincent Briccetti, to whom this case was previously assigned, dismissed all claims against the Putnam Defendants, as well as all claims against the Hilliard Defendants with the exception of claims for breach of contract and breach of the covenant of good faith and fair dealing. The Plaintiff thereafter filed its Second Amended Complaint ("SAC") charging each of the moving defendants with breach of contract and breach of the covenant of good faith and fair dealing. (SAC, ¶¶ 113, 115, 118.) The Putnam Defendants are also separately charged in a third cause of action with fraud. (*Id.* ¶¶ 116-17.)

For the reasons discussed below, Defendants' motions to dismiss are GRANTED in full.

## I. Background

The following facts are taken from the Second Amended Complaint unless otherwise indicated, and are assumed to be true for the purposes of the instant motion.[1] Plaintiff VEC is in the aircraft leasing business. (SAC ¶ 3.) In October, 2000, defendants Ira and Bridget Hilliard leased an aircraft from VEC. (*Id.* ¶ 8.) Pursuant to the terms of the lease, the Hilliards were to

---

[1] As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the Second Amended Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). The facts recited above do not constitute findings of fact by this Court.

make monthly payments of $30,645.43 to VEC for 162 months.  (*Id*. ¶ 26.)  Defendant New Light Church guaranteed the payment obligations of the Hilliards under the lease.  (*Id*. ¶¶ 9, 30.) The transaction was documented by, among other documents, a lease agreement between the Hilliards and VEC (the "Lease"), (*id*., Ex. A), and a guaranty between New Light Church and VEC (the "Guaranty"), (*id.*, Ex. C), both executed October 1, 2000.  By their terms, both documents are governed by the laws of the State of New Jersey.  (*Id.*  ¶¶ 27, 32.)

Separately, VEC and the Hilliards entered into a Deferred Origination Fee Agreement ("Fee Agreement"), also dated October 1, 2000, pursuant to which the Hilliards were to pay VEC a $185,000 lease origination fee prior to any transfer of title to the aircraft.  (*Id.* ¶¶ 28-29, Ex. B.) The Fee Agreement expressly provided that "both parties understand that this [Fee Agreement], together with the entire lease is assignable to Putnam County National Bank, or their designee." (*Id.*, Ex. B.)

VEC secured a loan from defendant Putnam to purchase the plane that was leased to the Hilliards, (*id.* ¶ 34), as it had for the purchase of three other aircraft that are the subject of this litigation.  (*Id.* ¶¶ 88, 90.)  As relevant to the instant motions, each of the four loans was collateralized with the particular aircraft leased, (*id*. ¶ 93), but the individual loan agreements did not contain a cross-collateralization provision.  (*Id*. ¶ 94.)  Putnam also required VEC to maintain a cash collateral account with Putnam in the form of a passbook savings account.  (*Id.* ¶ 96.) VEC had to maintain at least 5% of the total amount due to Putnam on all its aircraft loans in the account.[2]  (*Id.* ¶ 97.)

---

[2] As of early 2002, VEC alleges that it had approximately $5,000,000 in outstanding loans with Putnam which required that it have a cash balance of at least $250,000.  (SAC ¶ 98.)  In fact, VEC had approximately $450,000 in the passbook account as of that time.  (*Id.* ¶ 99.)

3

Though a copy is not included in the Second Amended Complaint, on October 31, 2000, The Hilliards, VEC and Putnam executed a Notice of Assignment (the "Assignment"). (Aff. of Bruce A. Seidman in Supp. of Mot. to Dismiss SAC ("Seidman Aff."), Doc. 49, Ex. 1.) The Assignment grants Putnam a security interest in the Lease and provides that payments due under the Lease otherwise payable to VEC may, upon notice to the Hilliards, be made directly to Putnam. (*Id.*)

From October 31, 2000 to January 2002, the Hilliards made lease payments directly to VEC as required. (SAC ¶ 36.) By letter dated January 24, 2002, however, Putnam directed the Hilliards to make their lease payments directly to Putnam. (*Id.*, Ex. D.) In its January 24 letter, Putnam explicitly refers to the Assignment and that it was exercising its rights thereunder. (*Id.*) VEC alleges that it received no prior notice that Putnam would be invoking the Assignment.[3] (*Id.* ¶ 37.)

Approximately two and one-half years later, in June 2004, Putnam sold the aircraft that was the subject of the Lease to the Hilliards in a sale that VEC characterizes as fraudulent. (*Id.* ¶ 38.) Putnam also sold the three additional aircraft that are the subject of this action to their lessees in August 2004, mid-2004, and late 2006 or early 2007, respectively. (Pl.'s Mem., Doc. 51, at 4.)

Plaintiff's initial Complaint was filed on March 22, 2010. (Doc. 1.) In its Second Amended Complaint, VEC alleges that Putnam breached its loan agreements with VEC—and in the process the covenant of good faith and fair dealing—by: (1) cross-collateralizing funds

---

[3] There is no indication either in the Second Amended Complaint or in the parties' submissions as to what triggered Putnam's invocation of the Assignment.

received from VEC's various lessees pursuant to the January 24, 2002 letter;[4] (2) misappropriating the funds in VEC's passbook savings account; and (3) keeping "payment overages" on the sale of VEC aircraft in violation of the loan agreements.  (SAC ¶ 113.)

VEC also alleges that the Putnam Defendants committed fraud by "fraudulent concealment," in that when they sold the four aircraft, they

> misrepresented a material fact in purporting to convey title to aircraft it did not own and/or by falsifying sale documents purportedly signed on behalf of VEC, *thereby inducing the justifiable reliance of third parties* and intentionally concealing this fraud from the plaintiff, who suffered the loss of the purchase price of the aircraft, the Early Termination Value due to VEC on the aircraft and, in the case of [the] Hilliard [Defendants], retaining the Deferred Origination Fee due to VEC for itself.

(*Id.* ¶ 112 (emphasis added).)

VEC alleges that the Hilliard Defendants breached the Fee Agreement by failing to pay the $185,000 fee to VEC when title to the aircraft was transferred to the Hilliards[5] in June 2004.  (*Id.* ¶ 115.)  By their breach of the Fee Agreement, the Hilliard Defendants are also alleged to have violated the covenant of good faith and fair dealing.  (*Id.* ¶ 118.)

## II. Discussion

### A. Extrinsic Evidence

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, the court may consider documents that are referenced in the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147,

---

[4] Putnam sent all of VEC's lessees an identical letter on January 24, 2002, directing that payments under the aircraft lease agreements be made directly to Putnam.  (SAC ¶ 54.)

[5] According to Plaintiff's theory, the Hilliard Defendants were defrauded by the Putnam Defendants when they purchased the aircraft.  (*See* SAC ¶ 112.)

152-53 (2d Cir. 2002); *Swan Media Group, Inc. v. Staub*, 841 F. Supp. 2d 804, 806 (S.D.N.Y. 2012).

In support of their motion to dismiss, counsel for the Putnam Defendants submitted a certification attaching a copy of the Schedule F to the bankruptcy petition filed on behalf of Victor Cilli[6] in February 2003, in the United States Bankruptcy Court for the District of New Jersey. (Certification of Joseph M. Cerra, Doc. 60.) In addition, in their memorandum in support of the instant motion, the Putnam Defendants make arguments stemming from the fact of Mr. Cilli's bankruptcy and assert that the proffered information is "of record in this proceeding or in other public proceedings involving Victor Cilli." (Putnam Defs.' Mem., Doc. 59, at vi,14-18.) The Putnam Defendants also make reference to certain federal criminal proceedings against Mr. Cilli in the United States District Court for the District of New Jersey. (*Id*. at 2.) In its memorandum opposing the Putnam Defendant's motion, Plaintiff VEC also relies on information from the Cilli Bankruptcy proceedings. (Pl.'s Mem., Doc. 51, at 2, 6-7; *see also* Certification of Victor Eugene Cilli, Doc. 54.) However, Mr. Cilli's bankruptcy proceedings are nowhere discussed or referenced in the Second Amended Complaint.

In addition, in support of their motion to dismiss, the Hilliard Defendants submitted an affidavit attaching copies of correspondence and e-mail communications between their counsel and counsel for VEC concerning a purported waiver of a statute of limitations defense. (Seidman Aff., Doc. 56, ¶¶ 2, 8, Exs. B-F.) In its memorandum opposing the Hilliard Defendant's motion, Plaintiff VEC also relies on the communications concerning the purported waiver agreement. (Pl.'s Mem., Doc. 53, at 1; *see also* Certification of Victor Eugene Cilli, Doc. 54, ¶¶ 69-70.) However, none of the proffered communications are included with, or referenced in, the Second Amended Complaint.

---

[6] At all times relevant to the transactions described above, Victor Cilli was the president of VEC. (SAC ¶ 3.)

As noted above, counsel for the Hilliard Defendants also submitted an affidavit attaching a copy of the Assignment. (Seidman Aff., Doc. 49, Ex. 1.) The Assignment is expressly referenced in the January 24, 2002 letter attached as Exhibit 4 to the Second Amended Complaint. Thus, of the extrinsic evidence proffered by the parties, only the Assignment was explicitly referenced in the Second Amended Complaint. (*See* SAC, Ex. D.) Moreover, Plaintiff VEC was a signatory to the Assignment. (*See* Seidman Aff., Doc. 49, Ex. 1); *cf. Murphy v. Cadillac Rubber & Plastics, Inc.* 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996) (declining to consider unsigned documents in ruling on motion to dismiss). Accordingly, this Court may properly consider the Assignment proffered by the Hilliard Defendants.

However, in deciding the motions, the Court did not consider the balance of the extrinsic evidence submitted by the parties.[7] Therefore, these motions will be considered as motions to dismiss pursuant to Rule 12(b)(6) and will not be converted to motions for summary judgment pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d) (providing that if, on a motion to dismiss, matters outside the pleadings are presented and not excluded by the court, the motion should be treated as one for summary judgment).

### B. Legal Standard for Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.,* 624 F.3d at 108. However, this requirement does not apply to legal

---

[7] The extrinsic evidence concerning the purported waiver of the statute of limitations defense relied on by both Plaintiff and the Hilliard Defendants is not properly considered in ruling on a motion to dismiss pursuant to Rule 12(b)(6), because the exhibits are neither mentioned nor relied upon in the Second Amended Complaint. Any analysis of such materials is also not appropriate under the judicial notice exception. Since the Court finds that Defendants are entitled to dismissal under Rule 12(b)(6) based on reasons unrelated to the effect of Mr. Cilli's bankruptcy, the Court also has not considered the extrinsic materials submitted by the parties concerning that action. In excluding the documents and other information contained in the bankruptcy proceedings, the Court expresses no opinion as to which, if any, of the documents could be properly considered in ruling on a motion to dismiss. The Court also deems the extrinsic information concerning the criminal proceedings against Mr. Cilli to be irrelevant, and has not considered that information in deciding the instant motions.

conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.* (citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief, "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v. Madison Square Garden,* 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7-8 (S.D.N.Y. Mar. 1, 2012) (finding pleadings on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions). A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

**C. Plaintiff's Contract Claims Against the Putnam Defendants Are Time Barred**

Putnam County National Bank is named in each of the three causes of action asserted in the Second Amended Complaint, namely, breach of contract, fraud, and breach of the covenant of good faith and fair dealing.  Bank officers Dean Ryder and Nancy Molloy are named in the latter two causes of action.  The first and third causes of action are related and will be addressed together herein.

The parties agree that the New York statute of limitations provisions govern the claims between VEC and the Putnam Defendants.  (Putnam Defs.' Mem., Doc. 59, at 7; Pl.'s Mem., Doc. 51, at 4.)  Under New York law, causes of action for breach of contract and breach of the covenant of good faith and fair dealing are governed by N.Y. C.P.L.R. § 213(2), which provides for a six-year statute of limitations.  *See Callahan v. Credit Suisse, Inc.*, 10 Civ. 4599 (BSJ), 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011) (the statute of limitations on a claim for breach of the implied covenant of good faith and fair dealing is six years). Accordingly, because Plaintiff filed his initial complaint on March 22, 2010, any cause of action that accrued on or prior to March 21, 2004 is time barred.

In the Second Amended Complaint, Plaintiff alleges, *inter alia*, that "[i]n breach of its agreements with VEC, Putnam cross-collateralized funds received from VEC's lessees pursuant to the January 24, 2002 letter."  (SAC ¶ 113.)  The Putnam Defendants assert that it was this action that triggered the alleged breach of contract and therefore the claim accrued on January 24, 2002, more than eight years prior to the commencement of this action.  Plaintiff, on the other hand, alleges variously:  that payments to Putnam under the loan agreements occurred through 2007 and therefore it could not know the extent of its losses until then; that the contractual breaches arising out of the fraudulent conveyances—or sales—of the aircraft all took place on or

9

after "mid-2004," within the limitations period; and that he "began to suspect that Putnam was not acting in a commercially reasonable manner as of mid-July 2007," and "was not fully aware of what Putnam had done" with respect to the passbook savings account until July 2008. (Pl.'s Mem., Doc. 51, at 4.) VEC's efforts to avoid the limitations bar are unavailing.

Here, the alleged breach occurred on January 24, 2002, when according to VEC, Putnam improperly began to cross-collateralize funds received from VEC's lessees. In New York, "a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 615 N.E.2d 985, 599 N.Y.S.2d 501 (1993) (citations omitted); *see also Callahan,* 2011 WL 4001001, at *5 (under New York law, a cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached); *Chase v. Columbia Nat. Corp.*, 832 F. Supp. 654, 659 (S.D.N.Y.1993) ("In New York, the statute of limitations for breach of contract requires that the action accrues at the time of breach and must be commenced within six years of it.") (citing N.Y. C.P.L.R. § 213[2]).

While VEC alleges that it was not made aware of the January 24 letter at the time, it provides no support for the proposition that an action for breach of contract is subject to a discovery rule which would toll the statute until such time as the injured party becomes aware of the breach. Indeed, New York law is exactly to the contrary. "[I]t is well settled that [under New York law] the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered." *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir.1997); *see also Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 233 (N.D.N.Y. 2009) (same).

Moreover, there has already been a finding by a member of this Court that VEC cannot plausibly allege that it was unaware of the circumstances giving rise to the breach *at the time it occurred*. In his Memorandum Decision, Judge Briccetti found:

> There are no allegations in the amended complaint to support plaintiff's argument that they were not aware the Hilliards' lease was breached. They, in fact, allege that they received lease payments until January 2002 and did not receive any thereafter. It is therefore implausible that VEC was not aware of the breach when it occurred in 2002.

(Doc. 38 at 15 n.2.) Nothing in the Second Amended Complaint suggests that a different outcome should issue here.[8]

Nor is there any force to Plaintiff's arguments that the actions undertaken by Putnam after January 24, 2002 constitute separate, actionable breaches of contract. In the first instance, Plaintiff does not proffer any legal authority in support of his position. Secondly, and more to the point, Plaintiff does not allege an agreement with Putnam *apart* from the loan agreements which financed the aircraft. As noted, those agreements were breached on January 24, 2002, when Putnam first began to cross-collateralize the payments received from VEC's lessees. The additional acts attributed to Putnam—misappropriating the funds in the passbook savings account and keeping the overages on the sales of the VEC aircraft—relate to the very same agreements between VEC and Putnam; agreements allegedly breached on January 24, 2002. That those subsequent acts may have contributed to Plaintiff's losses on the alleged breach does not serve to re-start the limitations period. On this point as well, New York law is clear: "a breach of contract cause of action accrues at the time of the breach . . . *though no damage occurs until later*." *Ely-Cruikshank*, 81 N.Y.2d at 402 (emphasis added) (citations omitted).

---

[8] While this portion of Judge Briccetti's Memorandum Decision related to the *Hilliard Defendants'* alleged breach of the Lease rather than the Putnam Defendants' breach of the loan agreement, the agreements are indisputably related in that the loan agreement is collateralized with the aircraft that is the subject of the Lease, (SAC ¶ 93), and the breaches involve the exact same circumstances and parties. Thus Plaintiff could, with reasonable diligence, have discovered it despite the lack of notice of the January 24, 2002 letter. *Cf.* N.Y. C.P.L.R. § 213[8].

The Court finds that the cause of action for breach of contract accrued on January 24, 2002, and was not commenced within the six year statute of limitations. Accordingly the first cause of action is DISMISSED as to Defendant Putnam.

Similarly, because Plaintiff's third cause of action against the Putnam Defendants is based on the same breach, (*see* SAC ¶ 118 ("[a]s set forth above, Defendants have violated the requirements of good faith and fair dealing in the Uniform Commercial Code")), and subject to the same six year statute of limitations, the third cause of action is DISMISSED as to all three Putnam Defendants. *See Callahan,* 2011 WL 4001001 at *7 ("Because Plaintiff's claim that Defendants violated the 2003 Mediation Agreement's implied covenant of good faith and fair dealing is duplicative of Plaintiff's claim for breach of this agreement, Plaintiff's third cause of actions is also barred by the statute of limitations.")

### D. Plaintiff Does Not State a Fraud Claim Against the Putnam Defendants

In the second cause of action, which sounds in fraud, the Putnam Defendants are not alleged to have made any false representations to VEC upon which VEC reasonably relied. Instead, Plaintiff alleges that the Putnam Defendants made false representations to *third parties*—namely, the purchasers of the aircraft—concerning the true ownership of the aircraft, and concealed *that* fraud from VEC. Essentially, VEC is arguing that it was defrauded by proxy. Not surprisingly, VEC proffers no legal authority to support this novel theory.

As the Putnam Defendants correctly note,

> Under New York law, to sustain a fraudulent inducement claim the Plaintiff must plausibly allege that "(1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) *the plaintiff reasonably relied upon the representation* and (4) the plaintiff suffered damage as a result of such reliance." A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information.

12

*Woods v. Maytag Co.,* 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (quoting *Wall v. CSX Transp., Inc.,* 471 F.3d 410, 415–16 (2d Cir.2006) (emphasis added).

Here, Plaintiff does not and cannot allege that the Putnam Defendants made any materially false representations *to VEC*, on which VEC relied to its detriment, in connection with the sale of the aircraft. Neither can it allege that the Putnam Defendants failed to disclose any material information *to VEC* in violation of a duty owed. Plaintiff's theory is that the purchasers were defrauded because they relied on the Putnam Defendants' misrepresentations concerning the ownership of the aircraft. (*See* SAC ¶ 112.) ("Putnam misrepresented a material fact in purporting to convey title to aircraft it did not own and/or by falsifying sale documents purportedly signed on behalf of VEC, thereby inducing the justifiable reliance of third parties and intentionally concealing this fraud from the plaintiff.")

While a court must take the plaintiff's allegations as true on a Rule 12(b)(6) motion, "the claim may still fail as a matter of law if it appears ... that plaintiff can prove no set of facts in support of its claim which would entitle [him] to relief, or if the claim is not legally feasible." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir.2006)). The allegations here are patently facially insufficient to make out a cause of action for fraudulent concealment under New York law because VEC is not alleged to have relied on any representation by the Putnam Defendants in connection with the sale of the aircraft. Accordingly, the second cause of action is DISMISSED as to all three Putnam Defendants.[9]

---

[9] Because the Court has determined that the second cause of action against the Putnam Defendants fails as a matter of law, it need not, as the Putnam Defendants request, construe the cause of action as one for conversion and tortious interference and dismiss it as time barred.

13

**E. Plaintiff Fails to State a Claim Against the Hilliard Defendants**

VEC alleges that the Hilliard Defendants are in breach of the Fee Agreement because they failed to pay VEC the deferred origination fee of $185,000 when title to the aircraft was transferred in June 2004. In support of its allegation, VEC states that the fee "was earned . . . as of the date the Lease [] between VEC and Hilliard was signed [on October, 1 2000]," and, as an agreement separate and apart from the Lease, it was not subject to the Assignment that was executed on October 31, 2000. (Pl.'s Mem., Doc. 53, at 2.) In response, the Hilliard Defendants argue that the Fee Agreement was assignable by its terms to Putnam, which exercised its rights pursuant to the January 24, 2002 letter. (Hilliard Defs.' Mem., Doc. 48, at 7-9; Hilliard Defs.' Reply Mem., Doc. 55, at 2-3.)

A resolution of this issue involves a discussion of the inter-relationship between the Lease, the Assignment, and the Fee Agreement. The Fee Agreement is short and provides in its entirety:

> This Agreement is between V.E.C.. Corporation of Delaware and Ira V. Hilliard & Bridget E. Hilliard, as lessees. Both parties agree that *in reference to lease agreement, number 1180, dated October 1, 2000* between both parties that a $185,000 lease origination fee shall be due prior to transfer of title to the aircraft. The $185,000.00 balance will not accrue interest for the entire term of the lease (162 mos.), nor shall any of the lease payments payable monthly go towards any of the principle [sic]. This balance shall be considered an "addition" to any balance that may be due under the terms of the lease number 1180, dated October 1, 2000 between both parties. *Furthermore, both parties understand that this agreement, together with the entire lease is assignable to Putnam County National Bank, or their designee.*

(SAC, Ex. B (emphasis added).) The Assignment provides in relevant part:

> Lessor hereby notifies Lessee that Lender is entitled to the benefits of each and every right accorded Lessor in the Lease including but not limited to remedies, inspection rights, indemnity rights, right to give consent, right to receive casualty payments or payment of costs and expenses incurred in exercising rights and remedies under the Lease, including reasonable attorney's fees, and the right to receive notices and other documents required to be furnished under the Lease.

14

(Seidman Aff., Doc. 49, Ex. 1, ¶ 5.)

The relevant facts are not in dispute. The lease referenced in the Fee Agreement is the lease between the Hilliards and VEC that is the subject of this action. The Assignment, which was executed on October 31, 2000,[10] and grants Putnam a security interest in the aircraft, makes no explicit mention of the Fee Agreement. Importantly, Plaintiff alleges, and the Hilliard Defendants admit, that the origination fee was paid by the Hilliards to Putnam. (SAC ¶ 106.) The Hilliard Defendants concede that they paid the fee to Putnam when the title was transferred "as a direct consequence of [Putnam's] exercise of the assignment." (Hilliard Defs.' Mem., Doc. 48, at 12.) The sole question presented is therefore a legal one: whether the Assignment entitled Putnam to payment(s) under the Fee Agreement as well as the Lease. The Court concludes that it did.

The parties agree that New Jersey law governs the claims between VEC and the Hilliard Defendants. In New Jersey, the construction of a contract is a question of law. *Kieffer v. Best Buy*, 205 N.J. 213, 222, 14 A.3d 737 (N.J. 2011) (*citing Jennings v. Pinto*, 5 N.J. 562, 569–70, 76 A.2d 669 (1950)). The objective in construing a contract is to determine the intent of the parties. *Id.,* 205 N.J. at 223. In all cases, "[t]he construction of a written instrument 'to be adopted is the one which appears in accord with justice and common sense and the probable intention of the parties.'" *Passaic County Bd. of Soc. Servs. v. Commc'ns. Workers of America, AFL-CIO*, A-1176-05T5, 2007 WL 1827245, at *5 (N.J. Super. Ct. App. Div. June 27, 2007) (citing *Krosnowski v. Krosnowski,* 22 N.J. 376, 387 (1956)). In doing so, courts generally give

---

[10] Plaintff rests its argument, in part, on the mistaken notion that the *Assignment* was executed on October 1 and the *Fee Agreement* on October 31, 2000. Accordingly, the argument goes, the Assignment could not possibly have contemplated the Fee Agreement because it predates the Fee Agreement. (Pl.'s Mem., Doc. 53, at 2.) In fact, it was the Assignment that was executed on October 31, thirty days *after* the Fee Agreement. Thus, Plaintiff cannot plausibly argue that the Fee Agreement, which it executed and which relates directly and exclusively to the Lease, was not contemplated in the Assignment.

contract terms their "plain and ordinary meaning." *Id.* (quoting *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 N.J. 378, 396 (2002)).

The Fee Agreement here was executed on the same day as the Lease by the identical parties and, by its terms, provides that it is assignable to Putnam *together with the entire lease*. Thus, giving these terms their plain and ordinary meaning, the Fee Agreement must be read in conjunction with the entire lease. Accordingly, when Putnam exercised its rights concerning the Lease under the Assignment, it properly included the Fee Agreement, as the Fee Agreement expressly and clearly so provided. It is this reading that best accords with justice and common sense and the probable intention of the parties. *Id*. Plaintiff's legal arguments to the contrary are not supported by any case law and are insufficient to defeat a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (stating that the requirement to accept as true all factual allegations in the complaint does not apply to legal conclusions).

Finally, Plaintiff also argues that Judge Briccetti has already ruled that the Fee Agreement is a separate contract and therefore not subject to the terms of the Lease. (Pl.'s Mem., Doc. 53, at 2.) Thus, Plaintiff asserts that Judge Briccetti's determination should be deemed the law of the case. (*Id*.) Plaintiff reads the Decision too broadly. In his Decision, Judge Briccetti determined that the statute of limitations applicable to the Lease was different from the statute of limitations applicable to the Fee Agreement. (Doc. 38 at 15.) In the instant motion, however, the Hilliard Defendants are not arguing that the Fee Agreement is a provision of the Lease, and are not proffering a statute of limitations defense concerning the first cause of action. Rather, the issue raised here concerns the application of the Assignment to the Fee Agreement. Judge Briccetti's Decision does not address this issue and is therefore not determinative here as the law of the case.

Therefore, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the Plaintiff's favor, the Court concludes that Plaintiff has not stated a cause of action for breach of contract against the Hilliard Defendants. Accordingly, the first cause of action is therefore DISMISSED as to the Hilliard Defendants.

Similarly, because Plaintiff's third cause of action against the Hilliard Defendants is based on the same alleged breach, the third cause of action is DISMISSED as to the Hilliard Defendants.[11]

### III. Conclusion

For the reasons set forth above, the motions of the Hilliard Defendants and the Putnam Defendants to dismiss the Second Amended Complaint in its entirety as against them is GRANTED. This action is dismissed with prejudice against Defendants Ira Hilliard, Bridget Hilliard, New Light Church World and Outreach Centers, Inc., Putnam National Bank, Dean Ryder, and Nancy Molloy. The Clerk of the Court is respectfully directed to terminate the motions (Docs. 43, 45).[12]

---

[11] Because the Court has determined that the third cause of action against the Hilliard Defendants fails as a matter of law, it need not determine, as the Hilliard Defendants assert, that it is time barred.

[12] Because the Court has dismissed the Second Amended Complaint in its entirety against the moving Defendants, it will also decline to address Defendants' arguments that Plaintiff VEC has no standing to bring this suit.

Plaintiff is hereby ORDERED to show cause why this action should not be dismissed without prejudice for want of prosecution as against the remaining Defendants—Columbia Enterprises, ABU Nasir Syed, Barry Elliot, Curtis W. Simonsen, and Stephan Dalziel—by October 16, 2012 at 10:00 am, in Courtroom 218 before the Hon. Edgardo Ramos, at the Charles L. Brieant United States Courthouse, 300 Quarropas Street, White Plains, NY 10601.

It is SO ORDERED.

Dated:   September 14, 2012
         White Plains, New York

                                                                    _____
                                                                    Edgardo Ramos, U.S.D.J.